[Cite as *Self Help Ventures Fund v. Jones*, 2013-Ohio-868.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| SELF HELP VENTURES FUND, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-A-0014** |
| LOIS J. JONES, et al., | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Ashtabula County Court of Common Pleas, Case No. 2010 CV 00521.

Judgment: Reversed and remanded.

*Nicholas D. Donnermeyer* and *Kimberlee S. Rohr,* Lerner, Sampson & Rothfuss, 120 East Fourth Street, Suite 800, Cincinnati, OH 45201-5480 (For Plaintiff-Appellee).

*Anne M. Reese,* Legal Aid Society of Cleveland, 121 East Walnut Street, Jefferson, OH 44047, and *Philip D. Althouse,* Legal Aid Society of Cleveland, 1530 West River Road, Suite 301, Elyria, OH 44035 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Lois J. Jones, appeals the summary judgment of foreclosure entered in favor of Appellee, Self Help Ventures Fund ("Self Help"), by the Ashtabula County Court of Common Pleas. At issue is whether Self Help's lack of standing when it filed this mortgage foreclosure action could be cured by the assignment of the mortgage and promissory note to it prior to the entry of final judgment. For the reasons

that follow, the trial court's judgment is reversed, and this matter is remanded for the trial court to dismiss the complaint without prejudice.

{¶2} On June 26, 2007, appellant purchased a home in Conneaut, Ohio. Appellant applied for and received a residential home loan from Sky Bank in the amount of $61,100. In return for the loan, appellant executed a promissory note in that amount in favor of Sky Bank. In order to secure the loan, appellant executed a mortgage in favor of Sky Bank. Later in 2007, Sky Bank merged into Huntington National Bank.

{¶3} Subsequently, appellant defaulted on the note, and the amount owed was accelerated. On May 10, 2010, Self Help filed this action against appellant. Self Help alleged it was the holder of the note on which appellant defaulted. Self Help attached copies of the note and mortgage to the complaint; however, both instruments showed Sky Bank, rather than Self Help, as the creditor.

{¶4} Some two months later, on June 30, 2010, Huntington National Bank, as "successor by merger to Sky Bank," assigned the note and mortgage to Self Help.

{¶5} On August 9, 2010, appellant filed an answer denying the material allegations of the complaint and asserting various affirmative defenses, including Self Help's alleged lack of standing.

{¶6} On December 29, 2010, Self Help filed a motion for summary judgment against appellant. In support of said motion, Self Help filed the June 30, 2010 assignment of the note and mortgage from Huntington to Self Help.

{¶7} In further support of its summary-judgment motion, Self Help filed the affidavit of Dawn Adams, an officer of Self Help's servicing agent. Ms. Adams stated that Self Help is the holder of the instant promissory note and mortgage as a result of the foregoing assignment from Huntington to Self Help. She stated that appellant is in

2

default on the note and mortgage and that the amount owed on the account had been accelerated, making the entire balance of $59,653.80 due. Ms. Adams authenticated the note and mortgage.

{¶8} In further support of its motion for summary judgment, Self Help filed the Sky Bank/Huntington merger documents demonstrating that in 2007 Sky Bank merged into Huntington National Bank.

{¶9} Appellant filed a brief in opposition to Self Help's motion for summary judgment and a cross motion for summary judgment, arguing that Self Help lacked standing. However, appellant did not dispute she defaulted on the note.

{¶10} On March 7, 2012, the trial court entered summary judgment and a decree in foreclosure against appellant, implicitly finding that Self Help had standing.

{¶11} A sheriff's sale was scheduled for July 18, 2012. On June 27, 2012, appellant filed a motion to stay execution of the order of sale pending appeal, which the trial court granted.

{¶12} Appellant now appeals, asserting two assignments of error. For her first assigned error, appellant alleges:

{¶13} "The trial court erred as a matter of law by granting Summary Judgment to the Appellee where the Appellee had no ownership interest in the note or the mortgage on the date the Complaint was filed, which is a fatal standing defect that cannot be cured by subsequent assignment of the note and mortgage."

{¶14} "Subject matter jurisdiction is a court's power to hear and decide a case on the merits * * *." *Morrison v. Steiner*, 32 Ohio St.2d 86 (1972), paragraph one of the syllabus. "Because subject-matter jurisdiction goes to the power of the court to adjudicate the merits of a case, it can never be waived and may be challenged at any

3

time." *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, ¶11. When the trial court lacks subject-matter jurisdiction, its final judgment is void. *Id.* at ¶12.

{¶15} In Ohio, courts of common pleas have subject-matter jurisdiction over justiciable matters. Ohio Constitution, Article IV, Section 4(B).

{¶16} "Standing to sue is part of the common sense understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102 (1998). Standing involves a determination of whether a party has alleged a personal stake in the outcome of the controversy to ensure the dispute will be presented in an adversarial context. *Mortgage Elec. Registration Sys. v. Petry*, 11th Dist. No. 2008-P-0016, 2008-Ohio-5323, ¶18. A personal stake requires an injury to the plaintiff. *Id.* The Supreme Court of Ohio has held that standing is jurisdictional in nature. *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas*, 35 Ohio St.2d 176, 179 (1973).

{¶17} In the context of a mortgage foreclosure action, the mortgage holder must establish an interest in the mortgage or promissory note in order to have standing to invoke the jurisdiction of the common pleas court. *Fed. Home Loan Mortg. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, ¶28.

{¶18} Whether standing exists is a matter of law that is reviewed de novo. *Cuyahoga Cty. Bd. of Commrs. v. State*, 112 Ohio St.3d 59, 2006-Ohio-6499, ¶23.

{¶19} Standing is similar to the requirement in Civ.R. 17(A) that every action "shall be prosecuted in the name of the real party in interest." The real party in interest is one who has a real interest in the subject matter of the litigation and not merely an interest in the action itself, i.e., "'one who is *directly* benefitted or injured by the outcome of the case.'" *Midwest Business Capital v. RFS Pyramid Management*, LLC, 11th Dist.

4

No. 2011-T-0030, 2011-Ohio-6214, ¶19, quoting *Shealy v. Campbell*, 20 Ohio St.3d 23, 24 (1985). Where the action has *not* been initiated by the real party in interest, Civ.R. 17(A) provides that no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for joinder or substitution of the real party in interest. Civ.R. 17 allows a representative of the real party in interest to file an action and to later be substituted by the real party in interest as long as the representative plaintiff also had standing in his own right to file the action. *Schwarzwald*, *supra*, at ¶37-44. *The real-party-in-interest rule concerns only proper party joinder, not standing. Id*. at ¶33.

{¶20} In contrast to standing, which is jurisdictional, Civ.R. 17(A) is considered procedural and is waived if not specifically pled. *Travelers Indemn. Co. v. R.L. Smith Co.*, 11th Dist. No. 2000-L-014, 2001 Ohio App. LEXIS 1750, *8 (Apr. 13, 2001).

{¶21} Under her first assigned error, appellant argues that because Self Help did not hold the note or mortgage when it filed the complaint, it lacked standing, and this defect could not be cured after the complaint was filed. She thus argues that standing is jurisdictional and could not be acquired after the complaint was filed.

{¶22} In contrast, Self Help argues that, although it did not hold the note or mortgage when it filed its complaint, it acquired standing when it became the holder of these instruments after the complaint was filed. It therefore argues that standing is not jurisdictional and could be acquired before the entry of final judgment.

{¶23} Thus, the issue before us is whether Self Help was required to have standing at the time it filed this action or whether its lack of standing was cured by the assignment of the mortgage and note to it after the action was filed but before final judgment was entered.

5

**{¶24}** The Supreme Court of Ohio recently addressed the identical issue before us in *Schwartzwald*, *supra.* In *Schwartzwald*, the Supreme Court held that standing is required to present a justiciable controversy and is a jurisdictional requirement. *Id.* at ¶21-22. The Court held that, because standing is required to invoke the trial court's jurisdiction, standing is determined as of the filing of the complaint. *Id.* at ¶24. Further, the Court held that a mortgage holder cannot rely on events occurring after the complaint is filed to establish standing. *Id.* at ¶26. Thus, the plaintiff cannot rely on Civ.R. 17(A) to cure its lack of standing by obtaining an interest in the subject of the litigation after the action is filed and substituting itself as the real party in interest. *Id.* at ¶36. Finally, the Court held that when the evidence demonstrates the mortgage lender lacked standing when the foreclosure action was filed, the action must be dismissed without prejudice. *Id.* at ¶40.

**{¶25}** This court followed the Supreme Court's holding in *Schwartzwald*, *supra*, in *Federal Home Loan Mortgage Corp. v. Rufo*, 11th Dist. No. 2012-A-0011, 2012-Ohio-5930, ¶44, and overruled this court's prior holding in, inter alia, *Everhome Mortg. Co. v. Behrens*, 11th Dist. No. 2011-L-128, 2012-Ohio-1454, ¶12, 16, that standing is not jurisdictional.

**{¶26}** Thus, pursuant to *Schwartzwald*, standing is jurisdictional. As a result, Self Help was required to establish an interest in the note or mortgage when it filed this action in order to have standing to invoke the jurisdiction of the trial court.

**{¶27}** We therefore hold that, pursuant to *Schwartzwald*, *supra*, and *Rufo*, *supra*, because Self Help did not hold the note or mortgage when it filed the complaint, it did not have standing to bring this foreclosure action against appellant. As a result, the trial court erred in granting summary judgment in favor of Self Help because it was not

6

entitled to judgment as a matter of law. We sustain appellant's first assignment of error, reverse the court's summary judgment in favor of Self Help, and order the trial court to dismiss the complaint without prejudice.

{¶28} For her second assignment of error, appellant alleges:

{¶29} "The trial court erred to the prejudice of the Appellant by granting Summary Judgment where the Appellee failed to sustain its burden to prove that it had standing to sue by providing evidence that it had both (1) possession of an indorsed note and (2) ownership of the mortgage on the date the Complaint was filed."

{¶30} Having sustained appellant's first assignment of error, we find her second assigned error to be moot. However, a court may rule on an otherwise moot case "where the issues raised are 'capable of repetition, yet evading review.'" *State ex rel. Beacon Journal Publishing Co. v. Donaldson*, 63 Ohio St.3d 173, 175 (1992), quoting *State ex rel. Plain Dealer Publishing Co. v. Barnes*, 38 Ohio St.3d 165 (1988), paragraph one of the syllabus. Because the issues raised by appellant's second assignment of error are likely to be reasserted on the re-filing of this action, we shall address them.

{¶31} First, appellant argues that in order to have standing to sue on the note in this case, Self Help was required to prove it was the holder of the note by negotiation, pursuant to R.C. 1303.31. Without citing any authority in support, she argues a note cannot be transferred by assignment, as it was in this case. We do not agree.

{¶32} R.C. 1303.31(A) identifies three classes of persons who are "entitled to enforce" an instrument, such as a note. As pertinent here, they include: (1) the "holder" of the note, and (2) a "nonholder" in possession of the note who has the rights of a holder.

7

{¶33} A "holder" is a person in possession of a note that is payable either to bearer or to an identified person. R.C. 1301.01(T)(1), renumbered June 29, 2011 as R.C. 1301.201(B)(21).

{¶34} "An instrument is transferred when it is delivered * * * for the purpose of giving to the person receiving delivery the right to enforce the instrument." R.C. 1303.22(A). The transfer of an instrument vests in the transferee any right of the transferor to enforce the instrument. R.C. 1303.22(B).

{¶35} "Negotiation" is a particular type of transfer. "Negotiation" means "a * * * transfer of possession of an instrument * * * to a person who by the transfer becomes the holder of the instrument." R.C. 1303.21(A). "[I]f an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder. If an instrument is payable to bearer, it may be negotiated by transfer of possession alone." R.C. 1303.21(B). Thus, in order for a person to become a "holder" of a note, it must have been transferred to him by negotiation.

{¶36} Further, "[t]ransfer of an instrument, *whether or not the transfer is a negotiation*, vests in the transferee any right of the transferor to enforce the instrument." (Emphasis added.) R.C. 1303.22(B). Thus, contrary to appellant's argument, a note can be transferred by a method other than negotiation.

{¶37} A "nonholder" is one in possession of the instrument who acquired it by some method of transfer other than negotiation. Official Comment 2 to R.C. 1303.22. A nonholder is entitled to enforce the instrument if the transferor was a holder at the time of transfer. *Id.* Although the transferee is not a "holder," he has the rights of the transferor as holder pursuant to R.C. 1303.22(B). *Id.*

8

{¶38} In this case, the note attached to the complaint is payable to an identified entity, Sky Bank. Thus, only Sky Bank could have negotiated the subject note by transferring the note and endorsing it to a specific person or to "bearer."

{¶39} However, Huntington, which acquired the note and mortgage from Sky Bank by way of merger, transferred both instruments by assignment to Self Help. Ohio Appellate Districts have repeatedly held that a note can be transferred by assignment. For example, in *Bank of New York v. Dobbs*, 5th Dist. No. 2009-CA-000002, 2009-Ohio-4742, the Fifth District held that the assignment of a mortgage, without an express transfer of the note, is sufficient to transfer both the mortgage and the note, if the record indicates that the parties intended to transfer both. *Id.* at ¶31. This court cited *Dobbs* with approval and followed its holding in *Rufo*, *supra*, at ¶44.

{¶40} Further, in *Deutsche Bank Nat'l Trust Co. v. Gardner*, 8th Dist. No. 92916, 2010-Ohio-663, the Eighth District held that, while the unendorsed note was insufficient to show that the transferee was a "holder" of the note, the assignment of the note and mortgage to the transferee demonstrated that the transferor transferred and assigned to the transferee all of its rights to the note. *Id.* at ¶22. The Eighth District further held that in these circumstances, the trial court could find that the transferee had the rights of a holder of the note with the right to enforce payment thereon. *Id.* Additionally, in *United States Bank, N.A. v. Higgins*, 2d Dist. No. 24963, 2012-Ohio-4086, the Second District held that the assignment of the mortgage, in circumstances indicating the transferor intended to transfer the note with the mortgage, was sufficient to demonstrate that the transferee had the rights of a holder of the note. *Id.* at ¶22.

9

{¶41} In light of the foregoing authority, we conclude that the assignment at issue here was effective to transfer the note from Huntington to Self Help and that Self Help has the rights of a holder with the right to enforce the note.

{¶42} Second, appellant argues that the Huntington/Sky Bank merger documents could not be considered on summary judgment because they were not authenticated as required by Civ.R 56(C). The merger documents are pertinent to the issue of whether Huntington, as successor by merger to Sky Bank, acquired the mortgage from Sky Bank and was authorized to assign it to Self Help. Self Help conceded below that the merger documents were not authenticated, and simply argued it was not required to authenticate them on summary judgment. However, pursuant to Civ.R. 56(C), Self Help is incorrect. Because the merger documents were not authenticated, they could not be considered on summary judgment.

{¶43} For the reasons stated in this opinion, it is the judgment and order of this court that the judgment of the Ashtabula County Court of Common Pleas is reversed, and this matter is remanded for the trial court to dismiss this action without prejudice.

TIMOTHY P. CANNON, P.J., concurs,

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

_____

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

{¶44} I dissent from the majority's opinion, reversing the trial court's decision, which entered judgment in favor of the plaintiff, Self Help Ventures. Since a plaintiff who becomes a holder of a note or mortgage after the filing of a complaint should be

10

given the opportunity to cure deficiencies related to standing, dismissal of Self Help's Complaint in this matter is unwarranted.

{¶45} The majority correctly cites to the Ohio Supreme Court's decision in *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, for the proposition that a plaintiff in a foreclosure action must hold the mortgage or note at the time of the filing of the complaint and not obtain the mortgage during the course of the proceedings. However, I disagree with the conclusion that the standing issues related to such matters are not curable during the course of the proceedings, prior to the entry of final judgment.

{¶46} Under the application of *Schwartzwald*, the inability to cure the standing deficiency creates various problems and obstacles for both plaintiffs and the court system. Such a holding is contrary to the interests of judicial economy and efficiency. The importance of judicial economy has been recognized by the courts in various contexts. *See Painesville City Local Schools Bd. of Edn. v. Ohio Assn. of Pub. School Emps.*, 11th Dist. No. 2005-L-100, 2006-Ohio-3645, ¶ 15 (noting the importance of speedy resolutions to conflicts to foster judicial economy by "unburdening crowded court dockets") (citation omitted); *F.O.E., Inc. v. Energex Oil & Gas Corp.*, 4th Dist. No. 86 CA 19, 1987 Ohio App. LEXIS 9233, *6 (Sept. 29, 1987) (emphasizing that certain civil rules serve the purposes of "convenience * * * speed, and judicial economy"). Under *Schwartzwald*, a case must be dismissed without prejudice when a plaintiff does not have standing at the time the action was filed, but becomes the holder of the note or mortgage at a future time during the course of the proceedings. This conclusion requires the refiling of the complaint and new responsive filings as well, all of which require additional consideration by the court, thereby creating an ineffective use of court

11

resources. This process will further extend the amount of time required to resolve the underlying foreclosure action and prohibits the administration of timely justice for all involved parties.

{¶47} The better course for dealing with scenarios in which the plaintiff becomes a holder of the note and mortgage after the filing of a complaint was that followed by the Ohio Supreme Court in *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 701 N.E.2d 1002 (1998). In that case, the court stated the following: "Although a court may have subject matter jurisdiction over an action, if a claim is asserted by one who is not the real party in interest, then the party lacks standing to prosecute the action. The lack of standing may be cured by substituting the proper party so that a court otherwise having subject matter jurisdiction may proceed to adjudicate the matter." *Id.* at 77, citing Civ.R. 17 ("[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest). In applying Civ.R. 17, it has been noted that curing deficiencies during the course of proceedings is a favorable way to remedy the failure to properly determine the issue of interest in litigation prior to the filing of a complaint. *See Kinder v. Zuzak*, 11th Dist. No. 2008-L-167, 2009-Ohio-3793, ¶ 21 (giving a plaintiff a reasonable opportunity to cure a deficiency by stating the proper parties in interest has "'the same effect as if the action had been commenced in the name of the real party in interest'") (citation omitted).

{¶48} Although Civ.R. 17 addresses real parties in interest, it has been applied in the past as justification for allowing standing to be cured during the course of the litigation as well. *Suster* at 77 (noting that a "[l]ack of standing challenges the capacity

12

of a party to bring an action, not the subject matter jurisdiction of the court"); *Travelers Indemn. Co. v. R. L. Smith Co.*, 11th Dist. No. 2000-L-014, 2001 Ohio App. LEXIS 1750, *7 (Apr. 13, 2001) (if a party lacks standing, the action should not be dismissed until reasonable time has been allowed for the party to ratify the commencement of the action). It is a logical and sensible conclusion that if an action that has not initially been filed in the name of a party who has an interest in the litigation can be cured, a person without standing at the time of the complaint should also be given the opportunity to cure the defect. This is consistent with the aforementioned principles of judicial economy and expediting the legal process.

{¶49} Further, such a standing deficiency can be easily cured without harm to the defendant. *See Deutsche Bank Natl. Trust Co. v. Traxler,* 9th Dist. No. 09CA009739, 2010-Ohio-3940, ¶ 11 (noting that a bank obtaining an assignment after the filing of a lawsuit could cure a standing defect when the assignment is produced "in sufficient time to apprise the litigants and the court that the bank is the real party in interest"). The party who obtains the mortgage during the proceedings could merely ratify its interest in the action by filing appropriate evidence of its status as holder of the mortgage and note, without having to refile the action. The same legal and factual issues would generally still be present.

{¶50} In the present matter, Self Help was assigned the mortgage on June 30, 2010, approximately a month and a half after the Complaint was filed. Jones was aware of this by August, since she attached the assignment document to her Answer filed on August 9, 2010. Thus, it cannot be argued that she was prejudiced or not given a chance to respond properly, since she was aware of the owner of the note and mortgage at the time she filed the Answer. This further supports the contention that it is

13

unnecessary to dismiss the Complaint simply for the purposes of refiling and beginning the litigation process anew, creating additional expenses for the parties on both sides with little benefit. While it has been noted that "[i]f there is no attempt at cure, then the action should be dismissed," Self Help in this matter did submit a Notice of Filing of Assignment of Mortgage in this matter, clarifying that it had both standing and was a real party in interest. *Kinder*, 2009-Ohio-3793, at ¶ 22.

{¶51} Further, in her second assignment of error, Jones argues that Self Help "failed to sustain its burden to prove that it had standing to sue by providing evidence that it had both (1) possession of an indorsed note and (2) ownership of the mortgage on the date the Complaint was filed." Jones argues that there was no acceptable evidence under Civ.R. 56(C) and (E) presented "to establish [that Self Help] had standing to sue on the date the complaint was filed." Again, she appears to be simply arguing that appropriate documents of the transfer of the mortgage and note must have been filed and possession transferred prior to the filing of the Complaint. However, as outlined above, this defect is curable. Further, Self Help submitted an affidavit of Dawn Adams, Vice President of Default Servicing, filed simultaneously with its Motion for Summary Judgment, asserting that certain attached business records, including the note, mortgage, and assignment of the mortgage from Huntington National Bank/Sky Bank to Self Help on June 30, 2010, were records kept in the course of regularly conducted business activity and that they were true and accurate copies of the documents. This should be sufficient to cure the defect and allow the court below to rule on the merits of the foreclosure action.

{¶52} Based on the foregoing, I respectfully dissent and would affirm the decision of the court below, granting summary judgment on the foreclosure action in favor of Self Help.